Youssef H. Hammoud (SBN:321934)
**HAMMOUD LAW, P.C.**
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: 949-301-9692
F: 949-301-9693
E: yh@lawhammoud.com

*Attorneys for Plaintiff,*
*Hassan Serhan*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASSAN SERHAN,<br><br>Plaintiff,<br><br>v.<br><br>HYUNDAI CAPITAL AMERICA d/b/a KIA FINANCE AMERICA; TRANS UNION LLC; EQUIFAX INFORMATION SERVICES, LLC; and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendants. | Case No.: 5:23-cv-1054<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF:**<br><br>1. FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681 *et seq.*<br>2. CCRAA, Cal. Civ. Code § 1785 *et seq.* |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Hassan Serhan ("Plaintiff"), through his attorneys, allege the following against Hyundai Capital America d/b/a Kia Finance America ("Kia"), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union"), collectively ("Defendants").

- 1 -

**INTRODUCTION**

1. Count I and II of Plaintiff's Complaint is based upon the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. The FCRA is a federal statute that broadly regulates the credit reporting agencies and furnishers of credit information. Among other things, the FCRA prohibits credit reporting agencies and furnishers from reporting incomplete or inaccurate information on a consumer's credit report.

2. Count III and IV of Plaintiff's Complaint is based upon the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 *et seq.*, which regulates credit reporting agencies and furnishers of information from reporting incomplete or inaccurate information on a consumer's credit report.

3. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**JURISDICTION AND VENUE**

4. Jurisdiction of the court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

5. Supplemental jurisdiction of the court arises under 28 U.S.C. § 1367 as the state law claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

COMPLAINT AND DEMAND FOR JURY TRIAL

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

7. Defendants transact business here; therefore, personal jurisdiction is established.

## PARTIES

8. Plaintiff is natural person residing in Corona, California.

9. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. Plaintiff is a "consumer" as defined by Cal. Civ. Code § 1785.3(b).

11. Defendant Kia is a company that provides financing, leasing and protection plans, in addition to providing other financial services to authorized Kia dealers, affiliate and their customers. Defendant Kia can be served through its agent for service of process, National Registered Agents, Inc., located at 330 N Brand Blvd., Ste 700, Glendale, CA 91203.

12. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax can be through its agent for service of process,

COMPLAINT AND DEMAND FOR JURY TRIAL

Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

13. Defendant Experian is a *credit reporting agency*, a as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Experian can be served at its principal place of business located at 475 Anton Boulevard, Costa Mesa, California, 92626.

14. Defendant Trans Union LLC is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, IL 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois, 62703.

15. Defendants acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## **FACTUAL ALLEGATIONS**

COMPLAINT AND DEMAND FOR JURY TRIAL

*Background Information*

16. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

17. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

18. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

19. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

20. The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such

COMPLAINT AND DEMAND FOR JURY TRIAL

a vital role in assembling and evaluating consumer credit and other consumer information.

21. Equifax, one of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

22. The CRA Defendants consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

23. The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRAs by furnishers, and other

COMPLAINT AND DEMAND FOR JURY TRIAL

information is independently gathered by CRAs from third party providers, vendors, or repositories, like computerized reporting services like PACER and Lexis-Nexis.

24. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

25. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendant's consumer reports.

26. The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

27. FICO Scores are calculated using information contained in the CRA Defendant's consumer reports.

28. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

29. FICO Scores factor in the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

COMPLAINT AND DEMAND FOR JURY TRIAL

a) "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

b) The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA indicates that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

30. Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

31. DTI compares the total amount a consumer owes to the total amount a consumer earns.

32. A consumer's income, however, is not included in their consumer report; only their amount of debt is.

33. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a

COMPLAINT AND DEMAND FOR JURY TRIAL

consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

*Allegations Specific to Credit Reporting*

34. In or around November 2016, Plaintiff entered into a 39-month lease for a 2017 Kia Sorrento with Defendant Kia (account #161357XXXX) (the "2016 lease").

35. Plaintiff made all his payments on time.

36. In or around November 2019, Plaintiff was shopping for a new Kia Sorrento.

37. The Kia dealership was running a promotion in which Plaintiff could return his 2017 Kia Sorrento early, sign a new lease for another Kia Sorrento for 36 months, and the remaining payments and fees on his current 2016 lease would be waived.

38. Plaintiff took advantage of this promotion and signed a new 36-month lease for a 2019 Kia Sorrento with Defendant Kia (account #19145xxxx) (the "2019 lease").

39. Plaintiff made all his payments on time with respect to the new lease.

40. However, in or around March 2020, Plaintiff began to receive collection calls from Defendant Kia, in which Kia was attempting to collect on an alleged debt regarding the 2016 Lease.

41. Plaintiff was confused and shocked that Defendant Kia was attempting to collect money he did not owe and was not responsible for.

COMPLAINT AND DEMAND FOR JURY TRIAL

42. Plaintiff explained to Defendant Kia that he had leased a new vehicle, the 2019 lease, and that his remaining payments were no longer due – which is what the promotion was for.

43. Defendant Kia was aware that Plaintiff had leased a new vehicle, as Defendant Kia financed the 2019 lease.

44. However, Defendant Kia stated that it did not receive a payment for the remaining amount owed on the 2016 lease from the Kia dealer.

45. Thereafter, Plaintiff contacted the Kia dealership to figure out what was happening, and the Kia dealership indicated that it had sent a check to Defendant Kia in January 2020 and the check was in fact cashed.

46. Plaintiff requested a copy of the check, which he sent to Defendant Kia.

47. Thereafter, Plaintiff contacted Defendant Kia and Kia indicated that it did receive the check when it was sent in January 2020, but it did not apply the funds to the 2016 lease account because there was allegedly no-account number provided with the check.

48. However, the check received by Defendant Kia was in fact deposited in January 2020 and the funds were acquired by Defendant Kia.

49. Plaintiff again informed the Kia dealer of his communications with Defendant Kia, and the Kia dealer in-turn sent another check to Defendant Kia for

COMPLAINT AND DEMAND FOR JURY TRIAL

the same amount of money that was previously cashed in January 2020 by Defendant Kia.

50. Defendant Kia is aware that Kia dealerships run promotions in which if a consumer leases a new vehicle, the consumer can turn their previous lease in early and get that the remaining payments/fees waived.

51. The type of promotion offered to Plaintiff is a customary and regular promotion run by both Defendant Kia and Kia dealerships.

52. In fact, Plaintiff's 2019 lease was returned early under the same promotion, and he acquired a new lease from Defendant Kia (account #221511xxxx) (the "2022 lease").

53. After returning Plaintiff's 2019 lease early under the promotion, all remaining payments and fees were waived and/or no longer owed by him.

54. Defendant Kia never called Plaintiff regarding any alleged debt owed on the 2019 Lease.

55. The 2019 lease account is accurately reporting as paid, closed and never late.

### *First Set of Dispute Letters*

56. In or around 2021, Plaintiff learned that the Defendant CRAs were reporting the 2016 Kia lease account with past due payments and a charge-off status.

COMPLAINT AND DEMAND FOR JURY TRIAL

57. Specifically, the Defendant CRAs were reporting that the 2016 lease account was late between March 2020 and June 2020, and that the account status was charged-off.

58. The information being reported was inaccurate and/or misleading because Plaintiff had returned the 2016 lease in November 2019, and he was not responsible for any payments after returning the vehicle as part of the promotion he took advantage of.

59. Moreover, the reporting was inaccurate because Defendant Kia had in fact received payment in January 2020 for the alleged amounts owed on the 2016 Kia account.

60. Further, the reporting was inaccurate and/or misleading because the reporting gives the impression that Plaintiff was late on payments during the lease term, when the lease was terminated months prior.

61. Plaintiff has never been late on his 2016 Kia lease account.

62. Defendant Kia was aware that Plaintiff took advantage of the promotion when he signed the 2019 Kia lease, and despite this knowledge, continued to furnish inaccurate and/or misleading information to the Defendant CRAs.

63. Plaintiff contacted and disputed the reporting of the 2016 lease account with Defendant Kia on multiple occasions throughout 2021.

COMPLAINT AND DEMAND FOR JURY TRIAL

64. Furthermore, in or around 2021 and 2022, Plaintiff sent multiple disputes to the Defendant CRAs regarding the inaccurate reporting of the 2016 Kia lease account.

65. In response to all his disputes, Defendant Kia and the Defendant CRAs failed to correct the inaccurate reporting.

66. For a while, Plaintiff gave up on trying to get the inaccuracy fixed and felt hopeless.

67. However, the inaccurate reporting continued to cause significant harm to Plaintiff, in the form of emotional and mental pain and anguish, and in his ability to acquire and apply for new credit.

68. As such, on or about January 15, 2023, Plaintiff pulled a copy of his credit reports.

69. The Defendant CRAs were still reporting the 2016 Kia lease account with a charge-off status, and a payment history reflecting that Plaintiff was late between March 2020 and June 2020.

70. Upon information and belief, Defendant Kia furnishes information about all its consumer accounts, including Plaintiff's 2016 lease account, to the Defendant CRAs, at a minimum, once a month.

71. As such, Defendant Kia furnished inaccurate information about Plaintiff on a monthly basis in the 2 years preceding the filing of the Complaint.

COMPLAINT AND DEMAND FOR JURY TRIAL

72. In or around January 2023, Plaintiff sent another dispute letter to the Defendant CRAs via certified mail.

73. The January 2023 dispute letter explained that the 2016 Kia lease account was reporting inaccurately because he returned the vehicle early in November 2019 as part of a promotion and leased a new Kia Sorrento.

74. Plaintiff stated that as part of the promotion he would not owe the last few months payments/fees since he signed a new lease.

75. Plaintiff explained that Defendant Kia contacted him regarding a debt owed in or around March 2020 and that he had told Defendant Kia all about the promotion.

76. Plaintiff informed the Defendant CRAs that Defendant Kia and the Kia dealers work hand-in-hand, run these types of promotions together and are aware that it is not unusual for consumers to return their leased vehicles early without any payment if they lease a new vehicle.

77. In addition, Plaintiff informed the Defendant CRAs that his 2019 lease account was supposed to terminate in November 2022, however, he returned it early in April 2022 as part of a similar promotion in which the last few months payments/fees were waived when he signed for a new lease.

78. Plaintiff requested the Defendant CRAs to remove the negative reporting from his 2016 lease account.

COMPLAINT AND DEMAND FOR JURY TRIAL

79. The Defendants CRAs received Plaintiff's January 2023 dispute letter.

80. Upon information and belief, Experian forwarded Plaintiff's dispute letter referenced above to Kia, as required under 15 U.S.C. § 1681i(a)(2).

81. Upon information and belief, Equifax forwarded Plaintiff's dispute letter referenced above to Kia, as required under 15 U.S.C. § 1681i(a)(2).

82. Upon information and belief, Trans Union forwarded Plaintiff's dispute letter referenced above to Kia, as required under 15 U.S.C. § 1681i(a)(2).

*First Set of Dispute results*

83. In or around February 2023, Defendants Trans Union, Experian, and Equifax responded to Plaintiff's January 2023 dispute.

84. Defendant Trans Union's dispute results indicated that it was still reporting the 2016 lease account as a charged-off with a late payment history.

85. Defendant Equifax's dispute results indicated that it was still reporting the 2016 lease account as a charged-off with a late payment history.

86. Defendant Experian's dispute results indicated that it was still reporting the 2016 lease account as a charged-off with a late payment history.

87. The Defendant CRAs did not investigate Plaintiff's dispute, and pursuant to their unreasonable procedures, merely forwarded an automated dispute to Kia, despite possessing information indicating that Plaintiff did in fact return the 2016 Kia

COMPLAINT AND DEMAND FOR JURY TRIAL

lease account in 2016 and leased a new vehicle that same month (the 2019 Kia lease account).

88. The Defendant CRAs were even reporting that the 2019 Kia lease account was closed in April 2022, and a new lease (the "2022 Kia lease") was opened that same month – which supports Plaintiff's contention that he took advantage of the same promotion but was not reported late.

89. Rather than perform a reasonable investigation based on Plaintiff's dispute and rely on information known by the Defendant CRAs through Plaintiff's credit file, the Defendant CRAs merely parroted information furnished by Kia despite awareness that the information was factually inaccurate, misleading and conflicted with information known by the CRAs.

90. Further, Defendant Kia failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from the Defendant CRAs.

91. Defendant Kia failed, among other things, to review all relevant information regarding the dispute or ignored this information. Consequently, Defendant Kia continued to furnish inaccurate data to the Defendant CRAs despite knowledge of Plaintiff's dispute and otherwise possessing information from which Defendant Kia should have reported accurate information about the 2016 Kia lease account.

COMPLAINT AND DEMAND FOR JURY TRIAL

92. The Defendant CRAs reporting was patently false and/or materially misleading, as Plaintiff relied on the promotion offered by Kia when returned his 2016 Kia lease account and acquiring the 2019 Kia lease and did not owe any money thereafter to Defendant Kia or any other entity.

93. Moreover, Defendant Kia received a check from the Kia dealership in January 2020 for the amount that was waived for Plaintiff as part of the promotion and that check was deposited by Defendant Kia that same month.

### *Second Set of Dispute Letters*

94. In or around March 2023, Plaintiff sent another dispute letter to the Defendant CRAs via certified mail.

95. The March 2023 dispute letter explained that Plaintiff had previously sent a dispute in February 2023 regarding the 2016 lease account, and he was disputing again because the issue was not resolved.

96. The March 2023 dispute letter stated that Plaintiff took advantage of a promotion in which he returned his 2016 lease early and signed a new lease, the 2017 lease.

97. As such, Plaintiff was told he was no longer responsible for any payments/fees on the 2016 lease account as part of the promotion he took advantage of.

98. Furthermore, Plaintiff stated that the check sent by the Kia dealership to Defendant Kia was actually cashed in January 2020.

- 17 -

COMPLAINT AND DEMAND FOR JURY TRIAL

99. A copy of the check was attached to Plaintiff's dispute letter.

100. Additionally, Plaintiff stated that he was given an invoice when he returned the 2016 lease which indicated he didn't owe any amount of money with respect to the 2016 lease account.

101. A copy of the invoice was attached to Plaintiff's dispute letter.

102. Plaintiff also provided the Defendant CRAs the location and phone number of the dealership that handled the transaction related to the 2016 lease account.

103. Plaintiff expressly stated that the Defendant CRAs had permission to talk about his account information to help with the investigation.

104. Plaintiff also included his phone number and email address and informed the Defendant CRAs they could contact him if they required any additional information or had any questions.

105. The Defendants CRAs received Plaintiff's March 2023 dispute letter.

106. Upon information and belief, Experian forwarded Plaintiff's dispute letter referenced above to Kia, as required under 15 U.S.C. § 1681i(a)(2).

107. Upon information and belief, Equifax forwarded Plaintiff's dispute letter referenced above to Kia, as required under 15 U.S.C. § 1681i(a)(2).

108. Upon information and belief, Trans Union forwarded Plaintiff's dispute letter referenced above to Kia, as required under 15 U.S.C. § 1681i(a)(2).

COMPLAINT AND DEMAND FOR JURY TRIAL

*Second Set of Dispute results*

109. In or around May 2023, Defendants Trans Union and Equifax responded to Plaintiff's May 2023 dispute.

110. Defendant Trans Union's dispute results indicated that it was still reporting the 2016 lease account as a charged-off with a late payment history.

111. Defendant Equifax's dispute results indicated that it was still reporting the 2016 lease account as a charged-off with a late payment history.

112. Defendant Experian failed to send Plaintiff his dispute results by mail as required under 15 U.S.C. § 1681i.

113. Upon information and belief, Defendant Experian continues to report inaccurate information about the 2016 Kia lease account, indicating that the account was charged-off, and was late between March 2020 and July 2020.

114. The Defendant CRAs did not investigate Plaintiff's dispute, and pursuant to their unreasonable procedures, merely forwarded an automated dispute to Kia, despite possessing information indicating that Plaintiff did in fact return the 2016 Kia lease account in 2016 and leased a new vehicle that same month (the 2019 Kia lease account).

115. The Defendant CRAs were even reporting that the 2019 Kia lease account was closed in April 2022, and a new lease (the "2022 Kia lease") was

COMPLAINT AND DEMAND FOR JURY TRIAL

opened that same month – which supports Plaintiff's contention that he took

advantage of the same promotion but was not reported late.

116. Rather than perform a reasonable investigation based on Plaintiff's dispute, and rely on information known by the Defendant CRAs through Plaintiff's credit file, the Defendant CRAs merely parroted information furnished by Kia despite awareness that the information was factually inaccurate, misleading and conflicted with information known by the CRAs.

117. Further, Defendant Kia failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from the Defendant CRAs.

118. Defendant Kia failed, among other things, to review all relevant information regarding the dispute or ignored this information. Consequently, Defendant Kia continued to furnish inaccurate data to the Defendant CRAs despite knowledge of Plaintiff's dispute and otherwise possessing information from which Defendant Kia should have reported accurate information about the 2016 Kia lease account.

119. The Defendant CRAs reporting was patently false and/or materially misleading, as Plaintiff relied on the promotion offered by Kia when returned his 2016 Kia lease account and acquiring the 2019 Kia lease, and did not owe any money thereafter to Defendant Kia or any other entity.

COMPLAINT AND DEMAND FOR JURY TRIAL

120. Moreover, Defendant Kia received a check from the Kia dealership in January 2020 for the amount that was waived for Plaintiff as part of the promotion and that check was deposited by Defendant Kia that same month.

### *Damage due to inaccurate credit reporting*

121. Defendants' inaccurate reporting caused Plaintiff's credit score to decrease and credit worthiness to suffer.

122. The inaccurate credit reporting has caused Plaintiff to suffer from emotional distress and mental pain and anguish, including but not limited to, stress, headaches, anxiety, embarrassment, sleepless nights, frustration, and confusion.

123. Defendants conduct was malicious and/or oppressive.

124. Defendants had all the information they needed to update Plaintiff's credit report and failed to do so.

125. Defendants Trans Union, Equifax and Experian failed to conduct a reasonable reinvestigation.

126. Defendant Kia failed to conduct a reasonable investigation upon receipt of the dispute from the Defendant CRAs.

127. Defendant Kia furnished information to the credit reporting agencies it knew or should have known was inaccurate.

COMPLAINT AND DEMAND FOR JURY TRIAL

128. In or around January 2023, Plaintiff was attempting to obtain an auto loan from Kia of Irvine dealership.

129. However, Plaintiff was denied due to the inaccurate reporting by the Defendants with respect to the 2016 Kia lease account.

130. Plaintiff was told if he brought a co-signer he would be approved.

131. The next day, Plaintiff brought a co-signer but was again denied due to the inaccurate reporting by the Defendants with respect to the 2016 Kia lease account.

132. The 2016 Kia lease account is the only account reporting on Plaintiff's credit reports with derogatory, delinquent and/or negative information.

133. The denial caused Plaintiff to suffer from significant emotional distress and mental pain and anguish, including embarrassment.

134. In addition, the inaccurate reporting caused Plaintiff to emotional and mental pain and anguish, including but not limited to, sleepless nights, frustration, confusion, helplessness, fear, stress, anxiety, and caused Plaintiff to suffer from severe migraines for an extended period of time, requiring Plaintiff to take over the counter medication.

135. As a result of Defendant's conduct, Plaintiff has sustained and continues to sustain actual damages.

## COUNT I
**Defendants Equifax, Experian, and Trans Union**

COMPLAINT AND DEMAND FOR JURY TRIAL

**Violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.***

136. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

137. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

138. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

139. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

140. The FCRA requires credit reporting agencies, like Trans Union, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

COMPLAINT AND DEMAND FOR JURY TRIAL

141. Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy.

142. Consequently, Defendants routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information and possess information establishing that the reported information is in fact inaccurate.

143. Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendant from which Defendant is on notice of their unreasonable procedures.

144. Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681(e)(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit

COMPLAINT AND DEMAND FOR JURY TRIAL

reports and credit files they published and maintained concerning the
Plaintiff.

145. Even after Plaintiff notified Defendants Equifax, Experian and Trans Union
of the inaccurate information, the credit reporting agencies continued to
inaccurately report the 2016 Kia lease account.

146. When a consumer disputes the accuracy or completion of information
included in a CRA's credit file, the FCRA requires the agency to either
conduct a reasonable reinvestigation into the disputed information **or** delete
the disputed information from the consumer's credit file within thirty (30)
days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

147. When conducting its reinvestigation of disputed information in a consumer
report, the credit reporting agency is required to "review and consider all
relevant information submitted by the consumer."

148. Additionally, the CRA must notify the person who furnished the disputed
information of the consumer's dispute within five business days of its
receipt. When notifying the furnisher of the consumer's dispute, the CRA is
to "include all relevant information regarding the dispute that the agency
received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

149. Defendants' violations of 15 U.S.C. § 1681i include, but are not limited to
the following:

COMPLAINT AND DEMAND FOR JURY TRIAL

i. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

ii. Failing to consider all relevant information while investigating Plaintiff's dispute.

iii. Failing to include all relevant information when notifying Kia of Plaintiff's dispute.

150. Instead of reasonably reinvestigating Plaintiff's dispute, Defendants "verified" the tradeline was accurate and continued to report the 2016 Kia account with a late payment history and charge-off status.

151. Defendant's acts, as described above, were done willfully and knowingly.

152. Alternatively, Defendant was negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

153. Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit report.

154. Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate

COMPLAINT AND DEMAND FOR JURY TRIAL

information from Plaintiff's credit file or correct the inaccurate information
upon reinvestigation.

155. As a result of Defendants' Equifax, Experian, and Trans Union's violations
of 15 U.S.C. § 1681, Plaintiff suffered actual damages which have been
further described above.

156. Defendant Experian violated 15 U.S.C. § 1681i(a)(6)(A) by failing to
provide written notice to Plaintiff of the results of the reinvestigation of his
March 2023 dispute by mail.

157. Defendants Equifax, Experian, and Trans Union's violations were willful,
rendering each Defendant individually liable for punitive damages in an
amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

158. In the alternative, Defendants Equifax, Experian, and Trans Union were
negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

159. Plaintiff is entitled to recover actual damages, statutory damages, costs and
attorney's fees from Equifax, Experian, and Trans Union in an amount to be
determined by the Court pursuant to 15 U.S.C. § § 1681n and 1681o.

## **COUNT II**
### **Defendant Kia**
### **(Violations of the FCRA, 15 U.S.C. § 1681s-2(b))**

160. Plaintiff incorporates by reference all of the above paragraphs of this
Complaint as though fully stated herein at length.

COMPLAINT AND DEMAND FOR JURY TRIAL

161. On at least one occasion within the past two years, by example only and without limitations, Defendant Kia violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

162. The FCRA requires a furnisher, such as Kia, after receiving notice from a credit report agency that a consumer disputes information that is being reported by that furnisher to conduct an investigation with respect to the dispute information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

163. Plaintiff notified the Defendant CRAs through 2021 and 2022, and again in January 2023, that reporting a late payment on the 2016 Kia lease account was inaccurate because Plaintiff had returned the vehicle early as part of a promotion, obtained the 2019 Kia lease account, and was told any remaining payments/fees were waived. Thereafter, the Defendant credit reporting agencies notified Defendant Kia that Plaintiff was disputing the information it had furnished to the credit reporting agency and forwarded the dispute to Kia.

COMPLAINT AND DEMAND FOR JURY TRIAL

164. Kia is liable under sections 1681n and 1681o of the FCRA by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(B):

a. Willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

b. Willfully and negligently failing to review all relevant information concerning Plaintiff's 2016 Kia lease account;

c. Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

d. Willfully and negligently failing to report the inaccurate status balance and status of the inaccurate information to all credit reporting agencies;

e. Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

f. Willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiff to the credit reporting agencies; and

g. Willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

COMPLAINT AND DEMAND FOR JURY TRIAL

165. Kia is liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## COUNT III
### Defendant Equifax, Experian, and Trans Union
### (Violations of the Cal. Civ. Code § 1785 *et seq.*)

166. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

167. Defendants violated the CCRAA. Defendants' violations include, but are not limited to, the following:

168. Defendants violated Cal. Civ. Code § 1788.14(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff when preparing a consumer credit report.

169. Defendants violated Cal. Civ. Code § 1785.16 *et. seq.*, including but not limited to, by:

   h.  failing to reinvestigate the disputed information;

   i.  failing to review and consider all relevant information submitted by Plaintiff with respect to the disputed information;

   j.  failing to notify the Plaintiff of the dispute results;

170. Defendants' acts, as described above, were done willfully and knowingly.

COMPLAINT AND DEMAND FOR JURY TRIAL

171. Consequently, Defendants are liable to Plaintiff for actual damages, punitive damages, and attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31.

<u>COUNT IV</u>
**Defendant Kia**
**(Violations of the Consumer Credit Reporting Agencies Act,**
**Cal. Civ. Code § 1785 *et seq.*)**

172. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

173. Defendant violated the CCRAA. Defendant's violations include, but are not limited to, the following:

k.  Defendant violated Cal. Civ. Code § 1785.25 by furnishing information on a specific transaction or experience to the credit reporting agencies that Defendant knew or should have known is incomplete or inaccurate.

i.  Plaintiff had returned the 2016 Kia lease early in November 2019 and obtained the 2019 Kia lease account as part of a promotion which waived the remaining payments/fees on the 2016 Kia lease.

ii.  Defendant Kia has knowledge that dealerships run these types of promotions and knows that Plaintiff has taken advantage of these promotions on more than one occasion.

iii.  Despite this, Defendant Kia furnished inaccurate information to the Defendant CRAs on a monthly basis for the 2 years preceding

- 31 -

the filing of the Complaint indicating that Plaintiff was late on his payments with respect to the 2016 Kia lease account and that the Account was charged-off.

iv.  Defendant Kia received multiple disputes directly from Plaintiff and from the Defendant CRAs with respect to the inaccurate reporting of the 2016 Kia lease account.

v.  Even after all the disputes, Defendant Kia continued to inaccurately furnish information to the credit reporting agencies about the 2016 Kia lease account.

vi.  As a result, the 2016 Kia lease account should never have reported with a late payment and a charge-off status on Plaintiff's consumer credit reports.

174. Defendant's acts, as described above, were done willfully and knowingly.

175. As a result of the foregoing violations of the CCRAA, Defendant is liable to Plaintiff for actual damages, punitive damages, and attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Hassan Serhan respectfully requests that judgment be entered against Defendants Hyundai Capital America d/b/a Kia Finance America,

COMPLAINT AND DEMAND FOR JURY TRIAL

Trans Union LLC, Equifax Information Services LLC, and Experian Information Solutions, Inc. for the following:

A.  Declaratory judgment that Defendants violated the FCRA;

B.  Actual damages pursuant to 15 U.S.C. § 1681n(a) and 15 U.S.C. § 1681o(a)(1);

C.  Statutory damages pursuant to 15 U.S.C. §1681n(a)(1)(A);

D.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.  Declaratory judgment that Defendants violated the CCRAA;

G.  Actual damages pursuant CCRAA, Cal. Civ. Code § 1785.31(a)(1) and Cal. Civ. Code § 1785.31(a)(2)(A);

H.  Punitive damages of $5,000.00 per violation pursuant to CCRAA, Cal. Civ. Code § 1785.31(a)(2)(B);

I.  Costs and attorney's fees pursuant to CCRAA, Cal. Civ. Code § 1785.31(a)(1);

J.  Punitive damages to be determined at trial, for the sake of example and punishing defendants for their malicious conduct, pursuant to Cal. Civ. Code § 3294(a);

COMPLAINT AND DEMAND FOR JURY TRIAL

K. Awarding Plaintiff any pre-judgment and post judgment interest as may be allowed under the law; and

L. Any other relief that this Court may deems appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

RESPECTFULLY SUBMITTED,

**HAMMOUD LAW, P.C.**

Dated: June 6, 2023

By: */s/ Youssef H. Hammoud*
Youssef H. Hammoud, (CA #321934)
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693
E: yh@lawhammoud.com
*Attorneys for Plaintiff,*
*Hassan Serhan*

COMPLAINT AND DEMAND FOR JURY TRIAL